**IBEW–NECA SOUTHWESTERN HEALTH AND BENEFIT FUND and its Board of Trustees, Plaintiffs,**

v.

**Jessie DOUTHITT, Defendant.**

**No. CIV.A. 3:01–CV–1730–L.**

United States District Court,
N.D. Texas,
Dallas Division.

June 25, 2002.

David I. Schiller, James Anthony Deets, Gibson, Dunn & Crutcher, Dallas, TX, for Plaintiffs.

Dennis E. Alvoid, Law Office of Dennis E. Alvoid, Dallas, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Before the court is Defendant's Motion to Dismiss; No Subject Matter Jurisdiction (hereinafter "Motion to Dismiss for Lack of Subject Matter Jurisdiction"), filed December 3, 2001. After having considered the motion, the parties' briefs, the evidence submitted, and the applicable law, the court **denies** Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction.

### I. Background

Plaintiffs IBEW–NECA Southwestern Health and Benefit Fund (the "Plan") and its Board of Trustees (the "Trustees," collectively "Plaintiffs") filed this action against Jessie Douthitt ("Douthitt") pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended, § 502(a)(3), 29 U.S.C. § 1132(a)(3). Plaintiffs seek declaratory and injunctive relief, specific performance, restitution, reimbursement, and/or recovery of certain amounts allegedly owed by the Defendant under the terms of the Plan and a reimbursement agreement signed by the Defendant.

On September 18, 1999, Douthitt was injured in an automobile accident and incurred substantial medical bills as a result of his subsequent treatment. The Plan advanced to Douthitt approximately $30,752 to pay for his medical bills in

exchange for his agreement to repay the Plan in full from any judgment or settlement he received from a third party. The parties memorialized their agreement in a written Reimbursement Agreement. The Reimbursement Agreement expressly assigned to the Plan the right to a recovery against a third person or an insurance company.

Douthitt brought a claim against the third-party tortfeasor and settled for approximately $20,000. The Plan agreed to accept two-thirds of that settlement in partial satisfaction of its lien, and allowed the remaining settlement funds to be apportioned between the Defendant and his attorney. Douthitt subsequently recovered an additional $25,000 from his uninsured/underinsured motorist coverage, but refused to reimburse the Plan for the approximately $17,500 he allegedly owes under the Reimbursement Agreement. The Plan filed the present action to recover these funds.

## II. Analysis

Douthitt contends the court lacks subject matter jurisdiction in light of the Supreme Court's recent decision in *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), and the Fifth Circuit's subsequent decision in *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439 (5th Cir.2002). Plaintiffs contend the holdings of these cases do not apply because the Plan and its Trustees seek only "equitable relief" under 29 U.S.C. § 1132(a)(3).

■ Section 502(a)(3) authorizes a civil action:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates ... the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to

enforce any provisions of ... the terms of the plan.

29 U.S.C. § 1132(a)(3). The term "equitable relief" in § 502(a)(3) refers only to "those categories of relief that were typically available in equity." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). In *Great–West Life*, the Supreme Court directly addressed whether an action to recover money pursuant to a reimbursement provision of an ERISA plan qualifies as "equitable relief" under § 502(a)(3). 122 S.Ct. at 711.

The facts of *Great–West Life* are as follows. Janette Knudson, a beneficiary under an ERISA-governed employee welfare benefit plan, was injured in a car accident and, as a result of her injuries, incurred significant medical expenses. *Id.* Great–West Life paid Knudson's medical expenses pursuant to a reimbursement provision which provided that Great–West Life shall have "the right to recover from [the beneficiary] any payment for benefits" paid by the plan that the beneficiary is entitled to recover from a third party. *Id.* Specifically, the reimbursement provision stated that the plan had "a first lien upon any recovery, whether by settlement, judgment, or otherwise," that the beneficiary collects from a third party up to "the amount of benefits paid [by the plan]." *Id.* The reimbursement agreement further provided that if the beneficiary recovered from a third party and failed to reimburse the plan, "then [the beneficiary] will be personally liable to [the Plan] ... up to the amount of the first lien." *Id.*

Knudson ultimately recovered a $650,000 settlement from the Hyundai Motor Company. *Id.* The settlement allocated approximately $256,750 to a Special Needs Trust to provide for Knudson's medical care; approximately $373,500 to attorney's fees and costs; $5,000 to reim-

burse the state medicaid program; and approximately $13,900 to satisfy Great–West Life's claims under the reimbursement provisions of the plan. *Id.* Great–West Life filed suit in federal court seeking declarative and injunctive relief under § 502(a)(3) to enforce the reimbursement provision. *Id.,* 122 S.Ct. at 712. Specifically, Great–West Life demanded payment of the remaining amounts owed to it under the reimbursement provisions of the plan, some $411,000. *Id.*

The Supreme Court held that § 502(a)(3) does not authorize an action to impose *personal liability* on a beneficiary of an insurance plan to recover payments by a third party. *Id.,* 122 S.Ct. at 719. Great–West Life argued that their suit was authorized by ERISA because they sought restitution, which they characterized as "equitable relief." *Id.,* 122 S.Ct. at 714. The Supreme Court distinguished restitution in equity from restitution at law, stating

[A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.

*Id.* Restitution in equity is not available, however, where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains." *Id.* In such cases, " '[the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant].' " *Id.* (internal citations omitted). The court explained, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* Based on the facts of the case, the Court determined that Great–West Life sought "in essence, to impose personal liability on [Knudson] for a contractual obligation to pay money-relief that was not typically available in equity" and therefore affirmed the circuit court's decision to dismiss the case. *Id.*

The Fifth Circuit recently applied this rule in *Bauhaus USA, Inc. v. Copeland,* 292 F.3d 439 (5th Cir.2002). In *Copeland,* a beneficiary of an employee benefit plan was injured in a motor vehicle accident and sustained injuries. The plan advanced funds to cover the beneficiary's medical expenses subject to a reimbursement agreement. Specifically, the reimbursement agreement provided that the beneficiary "will reimburse the Plan out of the [beneficiary's] recovery for all benefits paid by the Plan." The agreement further provided that "[t]he Plan will be reimbursed prior to the [beneficiary] receiving any monies recovered from a Third Party or their insurer as a result of judgment, settlement, or otherwise." *Id.* at 440.

The beneficiary subsequently entered a settlement agreement and recovered approximately $750,000 from the third party tortfeasor. *Id.* at 441–42. The settlement agreement required that approximately $78,000 be paid into the court registry to cover all liens against the proceeds. *Id.* Bauhaus filed suit in federal district court seeking a declaratory judgment that it was entitled to full reimbursement of approximately $46,000 from the amount held in the court registry. *Id.* The district court dismissed the case for lack of jurisdiction, and the Fifth Circuit affirmed.

The Fifth Circuit found the facts of *Copeland* "indistinguishable" from the facts of *Great–West Life. Id.* at 445–46. The court reasoned, "[i]n the instant case, the settlement proceeds are in the registry of the Mississippi Chancery Court. In

*Great–West,* the proceeds of the settlement were placed in a private [trust] outside the possession and control of the plan beneficiary." *Id.* The Fifth Circuit found these facts determinative, stating, "the defendants in this case, like the Knudsons in *Great–West,* are not in possession of the disputed funds." *Id.* The Fifth Circuit therefore characterized Bauhaus's claim as one for money due under a contract and affirmed the dismissal of the case for lack of subject matter jurisdiction.

■ The facts of the instant case are distinguishable from *Great–West Life* and *Copeland.* First, Plaintiffs seek to impose a constructive trust over funds currently being held by Defendant's attorney in his client trust account. *See* Pls.' Original Compl. ¶¶ 22–27, 35(3). In *Great–West Life,* the Supreme Court defined restitution in equity as a constructive trust "where money or property identified as belonging in good conscience to the plaintiff could be clearly traced to particular funds or property in the defendant's possession." 122 S.Ct. at 714. The funds held by Defendant's attorney in this case are clearly traceable to Defendant and in good conscience belong to Plaintiffs pursuant to the terms of the Reimbursement Agreement. Unlike the plaintiffs in *Great–West Life,* Plaintiffs here do not seek to impose personal liability on Defendant. Instead, Plaintiffs seek a constructive trust over particular funds, separate and apart from Defendant's personal resources, and only to the extent of the benefits it provided. *See* Pls.' Supp. Br. at 8. Even aside from Plaintiffs' expected assertion, that they are seeking relief in equity, its is clear by this action Plaintiffs are only seeking reimbursement of particular funds, by way of constructive trust, advanced to Defendant to pay certain of his medical expenses.

Second, unlike the settlement proceeds in *Copeland* and in *Great–West Life,* the funds held by Defendant in this case are presently within his possession and control. In *Copeland,* the funds were placed in the court registry and the court had to approve their disbursement. *Id.* at 441–42. In *Great–West Life,* the settlement proceeds were placed in a Special Needs Trust account under Cal. Prob.Code Ann. § 3611 (West 1991 and Supp.1993). 122 S.Ct. at 711. In both cases, the disputed funds were outside of the defendant's possession and control. In this case, however, the settlement proceeds are being held by Defendant's attorney, as he must do under Texas law. Numerous courts have allowed plan fiduciaries to seek such relief under similar circumstances. *See Great–West Life & Annuity Ins. Co. v. Brown,* 192 F.Supp.2d 1376, 1381 (M.D.Ga.2002) (permitting plan to seek restitution in equity where defendant placed settlement amount in non-interest bearing trust account); *Admin. Comm. of the Wal–Mart Stores, Inc. v. Varco,* No. 01C8277, 2002 WL 47159, *3 (N.D.Ill. Jan. 12, 2002) (permitting action against plan beneficiary to impose a constructive trust over settlement funds to avoid dissipation); *Bauer v. Gylten,* No. A3–00–161, A3–02–27, 2002 WL 664034, at *3–4 (D.N.D. April 22, 2002) (permitting plaintiffs to seek equitable restitution of funds that defendant's attorney agreed to hold in trust). Based on the facts of this case, the court concludes it has subject matter jurisdiction over the controversy. Accordingly, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **denied.**

### III. Conclusion

For the reasons stated herein, the court denies Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction.